J-A20037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AVA BROWN-FELICIANO | : | |
| | : | |
| Appellant | : | No. 2193 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002947-2021

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED SEPTEMBER 10, 2025**

Appellant, Ava Brown-Feliciano, appeals the judgment of sentence imposed after she pleaded guilty to recklessly endangering another person ("REAP").[1] She challenges the voluntariness of her guilty plea, alleging that the trial court coerced her to enter into it. We affirm.

During Appellant's oral guilty plea colloquy, the Commonwealth asserted that it would have presented evidence that, on October 18, 2020, Appellant engaged in conduct in the 500 block of North 19th Street in Philadelphia that placed Elijah Adams, the father of her child, at risk of serious bodily injury. *See* N.T. Plea Hearing, 7/17/24, 23. On July 17, 2024, Appellant entered into her guilty plea to REAP. *Id.* In exchange for the plea, the Commonwealth

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2705.

agreed to drop Appellant's remaining charges and recommend a sentence of one year of reporting probation.[2] **See** Guilty Plea Colloquy, 7/17/24, ¶ 13. On the same date, the plea court imposed the recommended one-year probation term. **See** N.T. Plea Hearing, 7/17/24, 25, 29; Order (sentencing), 7/17/24, 1.

On the day of the plea hearing, Appellant arrived late for the court proceeding, which the plea court noted was a repeated occurrence on Appellant's part throughout this criminal matter. **See** N.T. Plea Hearing, 7/17/24, 5 (the plea court: "We start court at nine, and every time you come late. Not sometimes, but every time. We start at nine. You come in at 11:11, and I don't understand what is unclear about that."). Appellant attributed her lateness to her status as an unhoused person. **Id.** (Appellant: "It is because I'm homeless. I have to find a shower and get dressed and get clothes and stuff.").

Prior to Appellant's late arrival to court, the prosecutor remarked that, "given the history of this case," the complaining witness and testifying police officer were "both on call." **Id.** at 3. Assuming that Appellant arrived late (as she eventually did), the Commonwealth asked the court for time to bring in

---

[2] The *nolle prossed* charges included: burglary of a place adapted for overnight accommodations with a person present and a bodily injury crime was committed, attempted, or threatened; possessing an instrument of crime; simple assault; and criminal mischief involving damaged property. 18 Pa.C.S. §§ 3502(a)(1)(i), 907(a), 2701(a), and 3304(a)(5), respectively. **See** Bills of Information, 4/23/21, 1-2.

its witnesses for trial. *Id.* By the time of Appellant's late arrival, the Commonwealth admitted that it was unable to then proceed with the scheduled trial, but it could have done so if Appellant had timely arrived to court. The Commonwealth accordingly requested that Appellant be taken into custody pursuant to a bench warrant to ensure her presence at a rescheduled listing:

> [**THE PROSECUTOR:**] I had my complainant on call for obvious reasons. I had an officer here at nine. He had to go to take his son to an appointment. I tried to see if I could get him back. I don't have contact with him now, so I would not be able to proceed today, and I would ask for a continuance, but I would ask the defendant be taken into custody. This has been going on for years now. This is a 2020 incident, and every time she comes in -- according to the docket -- with a similar explanation for why she couldn't be here on time, and she's trying to beat these charges by exhausting the complainant and the system and hoping we'll just withdraw this. That is unacceptable.
>
> There is an F-1 burglary here. This is a crime of violence. The complainant was injured in this case, the allegations are. We need to prosecute this case or resolve this in a way that ensures accountability, and she is unaccountable to show up for these charges. So[,] we ask you to take her into custody, so we can get that continuance and end this at the next listing.

N.T. Plea Hearing, 7/17/24, 8.

Appellant's counsel disagreed with the notion that Appellant was engaging in gamesmanship with the court, but agreed that another court listing would be needed given the circumstances:

> [**APPELLANT'S COUNSEL:**] Your Honor, I understand what [the prosecutor's] point of view is. I completely disagree. I do not see this as a situation where [Appellant] is trying to game the system. I see this as a situation where [Appellant] has a lot of needs and those needs are as of yet not met, and she is unable to be in the

position she needs to be and wants to be in order to be where she needs to be.

So, your Honor, because of all of those reasons and also the fact that I have not had enough time to fully convey this [plea agreement] offer to [Appellant], I would ask for [y]our Honor's indulgence and one more chance.

I understand the Commonwealth isn't ready today. It is obviously our date for us to have a long conversation and for us to try to figure this out. I fully believe this is a case that should be figured out outside of trial, [y]our Honor, and there are no ongoing problems. There [are] just difficult lingering charges that have held up this [c]ourt. And I understand there's an issue with judicial economy and how [Appellant's] continued tardiness is not good for [t]his court and it is unacceptable, and I acknowledge that, and so does [Appellant], but I truly think we are very close to being able to figure out what is going on with this case, and I am asking for one more date.

N.T. Plea Hearing, 7/17/24, 10-11.

The court stated its intention to keep Appellant in custody until the next listing for trial and asked the Commonwealth if its police witnesses would be available two days later. *See* N.T. Plea Hearing, 7/17/24, 12. In between those remarks by the court, Appellant told the court, "No, please. I just started working … Please[,] I just got a job." *Id.* The court summed up Appellant's options at that juncture: "You're going to take the [plea] offer or we're going to trial." *Id.*

After a break in the proceedings, the court explained to Appellant its reason for issuing the bench warrant, and Appellant decided to enter a guilty plea instead of waiting for trial in custody. The court questioned her desire to proceed with a plea, as follows:

- 4 -

**THE COURT:** The first thing I want to say, [Appellant], obviously, I issued a bench warrant because you weren't here on time, and I have issued them before, and we have lifted them. I made the decision to take you into custody, and we were going to do the trial on Friday, because the officer who was here left already, so we can't do the trial today.

Now you decided you want to take the offer. You have every right to take the offer. I just don't want you to feel like you're [taking] the offer because we are putting pressure on you.

If you want a trial, the officer is available on Friday, and we will have the trial on Friday. You have every right to a trial.

[**APPELLANT:**] I just don't want to be discriminated against because I'm homeless. A couple of times, I probably slept outside, but not that much. I know you probably are trying to help me. I didn't do well in jail, and I was sexually assaulted. I don't want to be around molesters or rapists or people who actually do wrong things when I [do not] feel I've done anything wrong.

This is my long-time boyfriend of ten years. We have a child together. We lived together, and to be honest, we got into an argument because he stayed out late and he wanted me out of the apartment and filed a restraining order against me because we had a lease together, and this was a few years ago. We have dealt with it.

You know what I mean?

**THE COURT:** What I am saying to you is that if you are pleading guilty, you need to be comfortable pleading guilty. I don't want you to feel like you have to plead guilty to help me, because it is not my life. It is your life.

So[,] I need to know this is what you want to do, because if you don't want to plead guilty, the police officer is available on Friday, [and] we'll have a trial on Friday, if that is what you want. You just have to be comfortable with your decision.

[**APPELLANT:**] I can make it on Friday without being arrested. I'm going through situations.

**THE COURT:** If you want to have it on Friday, you're going to stay in custody until Friday, because I want to make sure we go forward on Friday.

Your option[s] are either –

[**APPELLANT:**] I'll plead guilty then.

**THE COURT:** Is that something you want to do?

[**APPELLANT:**] Yes.

**THE COURT:** Because, like I said, I don't want to force anybody --

[**APPELLANT:**] I need an income. It is really important, and she's telling me I can work on probation, and I have to go --

**THE COURT:** You will be able to work on probation.

[**APPELLANT:**] I had something today at twelve. I thought I could go to both today. I have one. I have something else at four to do, and I won't have an income --

**THE COURT:** This is what you want to do?

[**APPELLANT:**] I would rather plead guilty and be on probation.

**THE COURT:** I just wanted to be clear this is what you want.

So[,] the paperwork is in order. You have the colloquy. You can start whenever you're ready.

N.T. Plea Hearing, 7/17/24, 13-16.

The combined plea and sentencing hearing then followed, during which Appellant twice agreed that no one forced, threatened, or coerced her into entering her plea. *Id.* at 20, 23. When Appellant was asked whether she understood her right to a jury trial, she responded: "Yes, or I'll be arrested

today. I'm pleading guilty. I want to go home. I need to continue with my life." N.T. Plea Hearing, 7/17/24, 22.

Appellant did not file any post-sentence motions. She subsequently filed a timely notice of appeal and, after timely filing a request for an extension of time to file a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925 because notes of testimony for the plea hearing were unavailable, filed a Rule 1925(b) statement. *See* Notice of Appeal, 8/15/24, 1; Order (Rule 1925(b)), 8/27/24, 1; Request for Extension of Time, 9/10/24, 1-2; Rule 1925(b) Statement, 10/25/24, 1. The record certified for this appeal does not contain a response from the trial court with respect to her request for an extension of time to file the Rule 1925(b) statement.[3]

Appellant presents the following question for our review:

Was not [A]ppellant's guilty plea involuntary and the product of coercion, in violation of state and federal due process and [Pennsylvania Rule of Criminal Procedure] 590, where the trial court issued an ultimatum by telling [A]ppellant that unless she accepted the Commonwealth's offer for a probationary sentence

---

[3] Here, any remand to address the facial untimeliness of Appellant's Rule 1925(b) statement, in an absence of a ruling on Appellant's request for an extension of time to file the statement, is unnecessary because the trial court addressed the merits of the issue raised in Appellant's Rule 1925(b) statement in its opinion for our review. *See* Plea Court Opinion, 12/16/24, 2-4. Accordingly, we will address the issue raised forthwith. ***See Commonwealth v. Burton***, 973 A.3d 428, 433 (Pa. Super. 2009) (*en banc*) ("Remand is not necessary in this case because appellant's counsel has filed a Rule 1925 concise statement setting forth the alleged error, and the trial court has filed an opinion addressing the issue presented in the 1925(b) concise statement").

and pled guilty that day she would be taken into custody pending trial?

Appellant's Brief, 2.

Appellant argues that this Court should reverse and vacate her guilty plea "because it was the product of coercion." Appellant's Brief, 7-8. She alleges that the plea court violated her federal and state constitutional rights to due process and caused her to enter an involuntary guilty plea by giving her an ultimatum to either enter her guilty plea or await trial in two days' time during which she would be held in custody on a bench warrant. *See id.* at 7-15. She compares her case to matters in which our appellate courts have found error when plea courts have participated in plea bargaining conferences or found plea counsel ineffective for failing to object to a plea court participating in the plea-bargaining process. *See id.* at 8-10, *citing Commonwealth v. Evans*, 252 A.2d 689, 690-91 (Pa. 1969) (finding error where a plea court engaged in two side-bar plea bargaining conferences prior to Commonwealth's plea offer), and *Commonwealth v. Johnson*, 875 A.2d 328, 330-31 (Pa. Super. 2005) (holding trial counsel rendered ineffective assistance by failing to object when plea court "actively encouraged" defendant to change his mind about rejection of plea offer and called defendant's choice to proceed with guilty plea "a wise decision"). Appellant argues the plea court improperly used the power of the bench warrant, in the circumstances presented, as a cudgel to improperly influence Appellant to enter her guilty plea.

Appellant's argument fails to address the denial of any claim by the trial court concerning the voluntariness of her guilty plea. Instead, her brief implies that there is no issue preservation concern here because, without any citation to supporting law, she alleges in the standard of review section of her brief that "[w]hether a defendant's guilty plea was the product of coercion and therefore [is] involuntary is a question of law," and states that our standard of review for the instant claim is *de novo*. Appellant's Brief, 1. Appellant is incorrect, as discussed below.[4]

We apply an abuse of discretion standard in review of issues concerning a trial court's decision on a motion to withdraw a guilty plea and apply different legal standards for withdrawal depending on whether the request was made prior to or after sentencing. **See Commonwealth v. Forrester-Westad**, 282 A.3d 811, 815-16 (Pa. Super. 2022) ("A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion.") (citation omitted); **see also Commonwealth v. Carrasquillo**, 115 A.3d 1284, 1291-92 (Pa. 2015) (addressing pre-sentence plea withdrawal standard requiring "demonstration by a defendant of a fair-and-just reason [for withdrawal], unless withdrawal would work substantial

_____

[4] While contract interpretation issues involved in the criminal plea-bargaining process present questions of law for which a *de novo* standard of review would apply, **see Commonwealth v. Kerns**, 220 A.3d 607, 612 (Pa. Super. 2019) (noting "contract interpretation" is question of law for which our standard of review is *de novo*) (citation omitted), Appellant's plea coercion claim cannot be characterized as a contract interpretation issue.

prejudice to the Commonwealth"); ***Commonwealth v. Muhammad***, 794 A.2d 378, 383 (Pa. Super. 2002) (addressing post-sentence plea withdrawal standard requiring "showing of prejudice on the order of manifest injustice").

An abuse of discretion standard of review is necessarily applied on direct review of a challenge to the voluntariness of a guilty plea because, as a matter of law, plea withdrawal claims and claims concerning the voluntariness of a guilty plea need to be preserved in the first instance before the plea court. Namely, this Court has held that "[a] defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing." ***Commonwealth v. Lincoln***, 72 A.3d 606, 609-10 (Pa. Super. 2013). Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(i) specifically permits defendants to file post-sentence motions "challenging the validity of a plea of guilty … or the denial of a motion to withdraw a plea of guilty." Pa.R.Crim.P. 720(B)(1)(a)(i). The failure to present an in-court challenge to the voluntariness of the plea at the guilty plea hearing or the failure to raise a related claim in a timely-filed post-sentence motion "results in waiver." ***Lincoln***, 72 A.2d at 610; ***see also Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa. Super. 2008) ("[A] request to withdraw a guilty plea on the grounds that it was involuntary is one of the claims that must be raised by motion in the trial court in order to be reviewed on direct appeal").

"The purpose of this waiver rule is to allow the trial court to correct its errors at the first opportunity, and, in doing, further judicial efficiency."

*Commonwealth v. Monjaras-Amaya*, 163 A.3d 466, 469 (Pa. Super. 2017). "It is for the court which accepted the plea to consider and correct, in the first instance, any error which may have been committed." *Commonwealth v. Roberts*, 352 A.2d 140, 141 (Pa. 1975) (footnote omitted).

Here, Appellant raised no challenge to the voluntariness of her guilty plea during her combined guilty plea and sentencing hearing and, thereafter, did not file any post-sentence motions. She thus raised her involuntary plea claim for the first time in her Rule 1925(b) statement, at which point waiver was mandated by *Lincoln*. *See Monjaras-Amaya*, 163 A.3d at 469 (noting in discussion of challenge to voluntariness of guilty plea, "a party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order") (citation, emphasis, and brackets omitted). Appellant's related constitutional violation claims, raised in the exact same manner, were also waived. *See Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

Further, Appellant was specifically warned in her written guilty plea colloquy about the possibility of waiver of any involuntary plea claims if she did not file a post-sentence motion, as follows:

> After pleading guilty and getting sentenced, if I wish to argue on appeal that my guilty plea was not voluntary, … I must first raise those claims in a post-sentence motion. If I don't file a written post-sentence motion within 10 days of my sentencing, I lose the right to file the motion and to argue those claims on appeal.

- 11 -

Written Guilty Plea Colloquy, 7/17/24, 5. Although the trial court did not appear to advise Appellant on the record as to her post-sentence motions rights as required by Pennsylvania Rule of Criminal Procedure 704(C)(3), her written colloquy serves as the basis for her notice of her rights, including her responsibility to preserve any challenges to the voluntariness of her plea – at the latest – in a post-sentence motion filed within ten days of sentencing. *See Commonwealth v. Torres*, 223 A.3d 715, 717 (Pa. Super. 2019) (stating that defendant's untimely post-sentence motion not excused where trial court failed to advise him of his appellate and post-sentence motion rights because written colloquy notified of such, and defendant confirmed that he read and understood written colloquy). Where, as here, the record demonstrates that Appellant never challenged the voluntariness of her guilty plea before raising it in her Rule 1925(b) statement, her lone issue on appeal is unreviewable. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, Appellant is not entitled to relief on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/10/2025

- 12 -